UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of American,

           Plaintiff,          Criminal Case No. 14-20425

v.

                               Honorable Judith E. Levy

D-6   Devin Dantzler,

           Defendant.

## United States' Response Opposing the Defendant's Motion for Compassionate Release

Defendant and Latin Count gang member, Devin Dantzler, committed the most violent act possible, murdering a rival gang member. The murder was the fatal act that was part of a brutal attack. Dantzler agreed to serve 30 years in prison for the murder, but now, with more than 20 years remaining on his sentence he seeks early release due to Covid-19 concerns. And since he has been in prison, Dantzler was caught with a dangerous homemade knife, a crime he was convicted of in the Southern District of West Virginia, a troubling fact he failed to acknowledge in his motions.

Dantzler is fortunate to have already received his first dose of the Pfizer vaccine. He does not have a chronic condition that places him at increased risk for severe complications from Covid-19. His exercised induced asthma does not

1

qualify. Dantzler's reasons for release are therefore not "extraordinary." His conviction and gang membership also establish that he is dangerous, he has not demonstrated that his release would reduce his risk of contracting Covid-19, and the § 3553(a) factors do not support the premature release of a murderer, all preventing him from showing a "compelling" justification for release. The Court should deny Dantzler's motion.

## Background

### Offense

On April 18, 2014, Dantzler killed rival gang member M.A. (Presentence Investigation Report (PSR) ¶¶ 25, 27). Danztler and fellow Latin Counts members were driving around Detroit "on patrol" looking for rival gang members to attack when they saw M.A. (*Id*. ¶ 27). M.A. had been a target of the Latin Counts threats after M.A. made disparaging remarks on social media about a deceased Latin Count. (*Id*. ¶¶ 20-24, 29). Seeking vengeance, Dantzler and his fellow gang members piled out of their vehicles and viciously attacked M.A. and his unwitting girlfriend, beating M.A. and striking him with a golf club. At the end of the attack Dantzler approached M.A.'s car, and when he had a clear shot took aim with his gun and fired, killing M.A. (*Id*. ¶¶ 25, 27). Dantlzer, with no regard for another person's life, callously killed M.A. to gain the respect of his fellow gang members and attain a higher rank amongst the Latin Counts. (*Id*. ¶ 17). M.A.'s family was

2

devastated and is reminded of their loss daily. (Gov. Sealed Ex. 1: Victim Impact Statement June 2017 from M.A.'s mother)

Dantzler's killing of M.A. was not the first time Dantzler exhibited signs of violence towards others. In 2012, at the age of 17, Dantzler was charged with assault and battery in Lincoln Park for punching a student in the face multiple times. The victim believed Dantzler attacked him in retaliation for a prior assault of Dantzler's cousin. The Judge overseeing the matter delayed imposing any sentence to allow Dantzler the opportunity to prove he was rehabilitated, but it was only two months after that case concluded that Dantzler killed M.A (PSR ¶ 57 ).

## Procedure

Dantzler pleaded guilty to RICO Conspiracy (in violation of 18 U.S.C. § 1962(d)) and agreed to serve 30 years in prison for murdering M.A. (ECF No. 323: Plea Agreement, PgID 1391). Dantzler is currently incarcerated at FCI McDowell in West Virginia. His projected release date isn't until 2041, with credit for good conduct. (Gov. Ex. 2: Inmate Data). Now, after serving only a fraction of his agreed upon 30 years sentence, Dantzler has sought early release. He is 25 years old and his only underlying medical condition is exercise induced asthma. Nevertheless, Dantzler moved for compassionate release or home confinement in the alternative, citing his asthma and the Covid-19 pandemic.

3

On July 24, 2020, the Warden at FCI McDowell denied Dantzler's request for release. (Ex. 3: Warden's Denial). On September 8, 2020, Dantzler moved to be released to home confinement. (ECF No. 487). This Court interpreted his motion as one for compassionate release and dismissed his motion without prejudice for failing to provide a description of his physical or medical conditions. (ECF No. 490: Order, PgID. 2711-12). On December 3, 2020, Dantzler refiled his motion, describing his asthma in particular, but failed to provide supporting documentation of his condition. (ECF No. 510). On December 17, 2020, this Court appointed Dantzler counsel and ordered the government to respond. (ECF Nos. 517, 518). Counsel filed a supplemental motion on January 15, 2021. (ECF No. 532).

Because Dantzler's filed his motion more than 30 days after his request for a reduction in sentence to the Bureau of Prisons (BOP) he has exhausted his administrative remedies. But Dantzler should not be granted compassionate release nor can this Court grant his request for home confinement in the alternative.

## Argument

### I. The BOP has responded to Covid-19 by protecting inmates and increasing home confinement.

#### A. The BOP has taken precautions to mitigate the risk from Covid-19 within its facilities.

The BOP has taken steps to protect all inmates, including Dantzler from Covid-19, guided by a [detailed protocol](#) that is has repeatedly revised to minimize the

4

virus's spread in its facilities. BOP Covid-19 Modified Operations Website. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). And the BOP has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement.

The BOP also restricted movement within and between its facilities. *Id.* at 834. Asymptomatic inmates who arrive at a facility are placed in quarantine for a minimum of 14 days, while symptomatic inmates are evaluated and treated while isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.* Within its facilities, the BOP has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation. When visitation is permitted at an institution, the visits are non-contact, require masks, and social distancing between inmates and visitors is enforced, either via the use of plexiglass (or similar barriers), or physical distancing (i.e., six feet apart). Visitors are screened for Covid-19 symptoms and their temperature is checked and if sick are not allowed to visit. But to ensure that relationships and communication are maintained throughout this disruption, the BOP has increased inmates' telephone

5

allowance to 500 minutes per month, and legal visits are accommodated upon request. *See* BOP Modified Operations.

Like all other institutions, penal and otherwise, the BOP has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the BOP's measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

### B. The BOP is increasing the number of inmates who are granted home confinement.

The BOP has also responded to Covid-19 by increasing the placement of federal prisoners in home confinement using recent legislation that temporarily permits the BOP to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the Covid-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General issued two directives, ordering the BOP to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing Covid-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the BOP to identify the inmates most at risk from Covid-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

6

The BOP' efforts on this point are not hypothetical. Currently, the BOP has released more than 7,700 inmates on home confinement. As the Sixth Circuit stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

This policy solution is also tailored to the realities of the Covid-19 pandemic. As the Attorney General's directives have explained, the BOP is basing its home-confinement decisions on several factors:

> 1.) Each inmate's age and vulnerability to Covid-19;
>
> 2.) Whether home confinement would increase or decrease the inmate's risk of contracting Covid-19; and
>
> 3.) Whether the inmate's release into home confinement would risk public safety.

(03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP). These criteria account for justifiable concerns about whether inmates "might have no safe place to go upon release and [might] return to their criminal activities," as well as "legitimate concerns about public safety." *Wilson*, 961 F.3d at 845.

The BOP has focused on the inmates who have the highest risk factors for Covid-19 and are least likely to engage in new criminal activity. Dantzler is not one of those inmates. This is true not just to protect the public generally, but to avoid the risk that a released defendant will bring Covid-19 back into the jail or

7

prison system if he violates his terms of release or is caught committing a new crime. *See* 18 U.S.C. § 3624(g)(5); 34 U.S.C. § 60541(g)(2).

The BOP must also balance other important considerations: how likely is an inmate to abide by Covid-19-based restrictions on release? Or if an inmate is considered for release, the BOP must assess the suitability of his release plan. Many inmates—particularly those who, like Dantzler, have been convicted of serious offenses and have a disciplinary record in prison – that resulted in another conviction – have already proven they are unwilling to abide by society's most basic norms. Dantzler's three separate filings (two pro se motions and appointed counsel's supplemental motion) all fail to address any proposed release plan. (ECF Nos. 487, 510, 532). His PSR from 2017 is no more enlightening. Dantzler did not know where he would go or who he might rely on when released, telling the Probation officer he wanted to leave Michigan and might move to Kansas. (PSR ¶ 73).

The BOP's system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the BOP to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, 452 F.Supp.3d 705, 712 (E.D. Mich. 2020) ("[A]s a general rule,

8

the Court lacks authority to direct the operations of the BOP."). It is especially true now, given the BOP's substantial and ongoing efforts to address the Covid-19 pandemic. And here, the BOP has already considered and denied Dantzler's request, a decision that should be given deference by this Court.

### C. The BOP is receiving Covid-19 vaccinations to administer to staff and inmates.

Currently, vaccinations are being distributed and Americans are being inoculated, including staff and inmates within the BOP. *See* CDC Covid-19 Vaccine Tracker. The BOP has already initiated the first doses of the vaccine to more than 24,000 staff members and inmates. And Dantzler is fortunate to be one of those inmates who has received his first dose of the vaccine at a time when many qualifying Americans are desperately trying to obtain that protection, but are unable despite their eligibility. Dantzler received his first dose of the Pfizer vaccine on January 21, 2021. (Gov. Sealed Ex. 4: BOP Vaccination Record). The Pfizer vaccine has been shown to be 95% effective at preventing Covid-19 illness and provides protection from new, more contagious strains of the virus. *See* https://www.theguardian.com/world/2021/jan/08/pfizer-vaccine-protects-against-new-covid-variants-study-suggests. Dantzler's second dose should be administered approximately three weeks later on February 11. He should achieve maximum immunity within one to two weeks of his second dose. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html

9

## II. The Court should deny Dantzler's motion for compassionate release.

### A. The Court cannot resentence Dantzler to home confinement.

Dantzler's motion for home confinement or any reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow. Dantzler's request for resentencing to home confinement does not fall within any of the statutory exceptions. The BOP, not the sentencing court, has the exclusive authority to determine a person's place of incarceration – including home confinement. Such a decision "is not reviewable by any court." 18 U.S.C. § 3621(b). The CARES Act did not alter this authority. Courts in this district have also recognized that under the CARES Act the authority to transfer an inmate to home confinement remains solely allocated to the BOP. See *United States v. Oliver*, 17-CR-20489, 2020 WL 2768852 (E.D. Mich. May 28, 2020) (citing cases). Therefore, the Court cannot grant Dantzler's requested relief to modify his

10

sentence and direct the BOP to release him to home confinement. (ECF No. 510: Dantzler's Motion, PgID. 2914).

### B. Dantzler has not shown "extraordinary and compelling reasons" for compassionate release.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate release. The government disagrees with that holding and preserves for further review its argument that § 1B1.13 remains binding. But, given the Sixth Circuit's holding in *Elias*, controlling circuit precedent now forecloses that argument before this Court.

Dantzler's reasons for release are not "extraordinary," meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). *Everyone* in our society faces a risk from Covid-19 right now. So as the Sixth Circuit has stressed, "generalized fears of contracting

11

Covid-19, without more," do not justify compassionate release. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020); *accord United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020); *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). But Dantzler's risk will be nearly eliminated after he receives his vaccinations and builds an immune response.

Dantzler does not have a chronic condition that the CDC has confirmed will cause him to face an increased risk of severe illness from Covid-19. The CDC maintains a running list of conditions that are known to place someone at a higher risk of severe illness. *See* [CDC Risk Factors](#) (as updated) (identifying the confirmed medical conditions that increase someone's risk from Covid-19). Dantzler's records establish that he does not have one of those conditions. Dantzler cites his asthma as a basis for his request for release, but the CDC indicates that someone with *moderate to severe* asthma *might* be at an increased risk of severe illness from Covid-19. There is no indication Dantzler's asthma is anything other than mild. While he has filled his prescription for an inhaler more recently, he did not use it initially. (Gov. Sealed Ex. 5: BOP Medical Records, p. 3). And when she was interviewed by the Probation Department, Dantzler's mother said his asthma was "exercised induced and he only needed [his inhaler] when he is highly active." (PSR ¶ 77). Dantzler's medical records confirm his asthma is only exercise

12

induced. (Gov. Sealed Ex. 5: BOP Medical Records, p. 71). Dantzler's release request is only based on a "generalized fear[] of contracting Covid-19." *Jackson*, 2020 U.S. App. LEXIS 32269, at *6.

And this Court has denied other asthmatic defendants release even in light of Covid-19. See *United States v. Coles*, No. 18-CR-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020); *United States v. Davis*, No. 18-20211, 2020 WL 2764585 (E.D. Mich. May 28, 2020); *United States v. Alzand*, No. 18-20703, 2020 WL 2781824 (E.D. Mich. May 29, 2020); *United States v. Buford*, No. 05-80955, 2020 WL 4040705 (E.D. Mich. July 17, 2020); *United States v. Files*, No. CR 17-20362, 2020 WL 4435170 (E.D. Mich. Aug. 3, 2020); *United States v. Coates*, No. 16-20414, 2020 WL 5035107 (E.D. Mich. Aug. 11, 2020); *United States v. Wright*, No. 17-20022, 2020 WL 4734912 (E.D. Mich. Aug. 14, 2020); *United States v. Harris*, No. 17-20485, 2020 WL 4788027 (E.D. Mich. Aug. 18, 2020); *United States v. Edwards*, No. 15-20564, 2020 WL 4816193 (E.D. Mich. Aug. 19, 2020); *United States v. Taylor*, No. 17-20791, 2020 WL 5200956 (E.D. Mich. Sept. 1, 2020); *United States v Anderson*, No. 13-20704-02, 2020 WL 6060658 (E.D. Mich. Oct. 14, 2020). All of these inmates were denied release before vaccinations for Covid-19 were even approved[1], whereas this Court will consider Dantzler's

---

[1] On December 11, 2020, the FDA approved Emergency Use Authorization (EUA) for the Pfizer vaccine.
On December 18, 2020, the FDA approved EUA for the Moderna vaccine.

13

motion the day before he may be scheduled to receive his second vaccination[2], making his request unpersuasive.

Because Dantzler is only 25 years old, even without the protection of the vaccine, he did not face the same risk from the disease that the elderly do. The combination of his exercise induced asthma and age, even when considered alongside the Covid-19 pandemic, thus does not rise to the level of an "extraordinary" circumstance.

Dantzler's reasons for release are not "compelling" either. In the pretrial-release context, the Sixth Circuit addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2. Bothra, who was detained for orchestrating a fraud scheme, was in his 70s and "had health issues rendering him more vulnerable to contracting

---

[2] Doses are meant to be distributed approximately three weeks apart, which would be on February 11, 2021. The Court has scheduled a hearing on February 10, 2021.

[Covid-19]." 2020 WL 2611545, at *2. But Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

Dantzler's circumstances are even less compelling. The "original grounds" for Dantzler's incarceration here were the murder of a rival gang member as the fatal act that was part of an otherwise brutal attack. *McGowan*, 2020 WL 3867515, at *2. His conviction for that offense, especially when combined with his conviction for possessing a dangerous weapon while in prison shows that Dantzler required a sentence of 30 years in prison. And unlike the pretrial defendant in *Bothra*, Dantzler was *convicted* of his offenses here—not just accused of it.

Dantzler, with no detailed plan, has also not demonstrated that his release would mitigate his risk of spreading Covid-19 to others. *See* https://www.wxyz.com/news/coronavirus/can-you-still-spread-covid-19-after-you-get-vaccinated. Furthermore, even in the face of this pandemic, this Court must also weigh whether the sentencing factors undermine release. And in Dantzler's case they do.

### C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the

15

§ 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). An assessment of the § 3553(a) factors alone should still disqualify him.

For starters, Dantzler's long remaining sentence of more than 20 years weighs heavily against release. This Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. In Dantzler's case because he has more than 20 years left to serve for murdering M.A., he is not someone who raises even a close question.

16

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id*. So Dantzler who has more than 20 years to serve must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id*.

There is no dispute Dantzler's upbringing was difficult and is something the parties and the Court already considered in imposing his 30 years sentence. But it is not a basis to reduce his sentence now in light of the Covid-19 pandemic. (ECF No. 325: Supplemental Motion, PgID. 3461-62). Whatever his motivation for joining, Dantzler was a gang member, part of a group of men who had no respect for their community, the police, or anyone that stood in their way. Their focus was to ensure that rival gangs and the members of their community feared them. To accomplish this, they went on "patrol" and brazenly engaged in violent acts in the middle of the day and in public, with total disregard for innocent bystanders. Dantzler murdered M.A. who had already suffered a brutal beating over something as superficial as a social media post. Dantzler's motion attempts to minimize his responsibility by stressing his age (18 years old) at the time he murdered M.A. and Dantzler's vulnerability to pressure from a group of men he made a conscious

17

decision to associate with and immerse himself in their violent culture. (*Id*. at PgID. 3466-67). But when Dantzler shot M.A. it was outside a neighborhood grocery store while customers and their children were in the immediate area. Dantzler not only showed a total disregard for M.A.'s life, but also for the life and safety of others and placed them in harm's way by firing his gun.

And since he has been in prison Dantzler has had multiple violations for destruction of property, failing to obey orders and being insolent to staff, and weapon possession, which he failed to acknowledge in his filings. (Gov. Sealed Ex. 6: Disciplinary Records). Most disturbing was his 2019 conviction in the Southern District of West Virginia for his possession of a dangerous homemade knife with a sharp seven inch blade (pictured below). *See* SDWV No. 19-00190 ECF No. 31: Judgment.



18

Dantzler's record casts significant doubt on whether he would abide by release conditions if released from custody. But more significantly his participation in BOP programs that he touts is far eclipsed by his continued disobedience and violence in prison, which proves his release would fail to further protect the public from such a dangerous individual. (EFC No. 325-3).

### III. If the Court were to grant Dantzler's motion, it should stay the release order pending any appeal by the United States.

If the Court were inclined to grant Dantzler's motion despite the government's arguments above, the government would request that the Court's release order include two provisions. First, the Court should order that he be subjected to a 14-day quarantine before release. Second, the Court should stay its order pending any appeal by the government to the Sixth Circuit. More specifically, the government would request that if the government files a notice of appeal before the 14-day quarantine ends, the Court's order would automatically be stayed through the completion of any appeal proceedings.

### Conclusion

Dantzler's motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/ Andrea Hutting
Andrea Hutting

19

                    Assistant United States Attorneys
                    211 W. Fort Street, Suite 2001
                    Detroit, MI 48226
                    313-226-9110 phone
                    andrea.hutting@usdoj.gov
                    P68606

Dated: January 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing and emailed copies of the Government's sealed exhibits to the following:

    James Gerometta

                    s/Andrea Hutting
                    Andrea Hutting
                    Assistant United States Attorney
                    211 W. Fort Street, Suite 2001
                    Detroit, MI 48226
                    313-226-9110 phone
                    andrea.hutting@usdoj.gov